IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AISHA BRADLEY,  | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-4753 |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
|     Defendants. | : | |

MEMORANDUM

**PEREZ, J.**                                                                                                     **JANUARY 12, 2026**

Aisha Bradley initiated this civil action by filing a voluminous *pro se* Complaint asserting numerous claims against 49 Defendants in connection with her multiyear plight to assert an interest in Philadelphia properties.  (*See* ECF No. 2.)  Bradley also filed motions for leave to proceed *in forma pauperis* (ECF No. 1) and for the appointment of counsel (ECF No. 3), among others.  For the following reasons, the Court will grant Bradley leave to proceed *in forma pauperis* and dismiss her Complaint.  The request for appointment of counsel will be denied.

I.   FACTUAL ALLEGATIONS[1]

The factual circumstances underlying Bradley's claims relate to litigation about four parcels of property located at 800 Seffert Street (the "Seffert Street Properties") in Philadelphia, Pennsylvania, and Bradley's attempts to assert rights with respect to those properties.  Prior to

---

[1] The factual allegations set forth in this Memorandum are taken from Bradley's Complaint (ECF No. 2) and various state court dockets of which this Court may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).
    Because the Complaint is over 1700 pages without exhibits, it is broken up into the following subparts on the docket:  ECF No. 2, ECF No. 2-1, ECF No. 2-3, ECF No. 2-4, ECF No. 2-5, ECF No. 2-6, ECF No. 2-7, ECF No. 2-8, ECF No. 2-9, ECF No. 2-10, and ECF No. 2-11.  For ease of reference, the Court will cite to each subpart, *e.g.*, "ECF No. 2-4 at 33," using the sequential pagination for each subpart assigned by the CM/ECF docketing system.

filing this action, Bradley was involved in eight other actions in this Court in connection with the Seffert Street Properties, all of which are now closed.[2] Having not succeeded in obtaining relief in those cases, Bradly now files this 1726-page Complaint, wherein she asserts an assortment of claims against forty-nine Defendants, all of whom were involved to some extent—either through state court proceedings or her federal removal cases and appeals—in litigation involving the Seffert Street Properties.[3]

---

[2] In all eight cases, Bradley attempted to remove to this Court state court civil tax actions pending before the Philadelphia Court of Common Pleas regarding delinquent real estate taxes for the Seffert Street Properties. Five of the cases were assigned to the late Gene E. K. Pratter, and three were assigned to Judge Juan R. Sánchez. Both Judges are named as Defendants in this action. Judge Pratter determined in three of the cases that the Court lacked jurisdiction over the removed state cases and remanded them back to the Philadelphia Court of Common Pleas. *See City of Phila. v. Bradley*, No. 24-015 at ECF Nos. 52, 53; No. 24-116 at ECF Nos. 45, 46; No. 24-269 at ECF Nos. 21, 22. On appeal, the Third Circuit Court of Appeals dismissed each of Bradley's appeals for lack of jurisdiction. *See, e.g.*, *City of Phila. v. Bradley*, C.A. Nos. 24-1210 & 24-1211. The fourth prior case was voluntarily dismissed by Bradley. *See City of Phila. v. Bradley*, No. 24-211 at ECF No. 11. The fifth case was remanded to the state court upon Bradley's request. *See City of Phila. v. Bradley*, No. 23-5044 at ECF No. 33.

In the remaining three cases, Judge Sánchez determined that the Court lacked jurisdiction and remanded them back to the Philadelphia Court of Common Pleas. *See City of Phila. v. Bradley*, No. 24-6054 at ECF Nos. 23, 24; No. 24-6155 at ECF Nos. 29, 30; No. 24-6156 at ECF Nos. 23, 24. On appeal, the Third Circuit affirmed Judge Sánchez's remand orders. *See, e.g.*, *City of Phila. v. Bradley*, C.A. Nos. 24-3324 & 24-3339.

To the extent that Bradley attempts to again remove these state court actions through this lawsuit, there is no basis for removal for all the reasons addressed in the prior cases.

[3] The forty-nine Defendants are: the City of Philadelphia; Summit Park East, GP; University City Housing Co.; Melissa Simola; Judge Patrick Dugan; Judge Michele Hangley; Judge Crystal Bryant-Powell; ADA James Dellafiora; Tracy Tripp; the Philadelphia District Attorney's Office; Amy Kirby; Thomas Marro; Darin Gatti; Feige Grundman; Jill Freeman; Alexandra Desantis; Rebecca Rhynhart; Jennifer MacNaughton; the City of Philadelphia Police Department 9th District; Mathew Barbato; Lauren Burgess; Linebarger, Goggan, Blair, and Sampson; Phoenicia Walace; Irene Bizzoso; Michael Ammann; "Super Court Per Curiam – John/Jane Does for the July 11, 2022 Order at cases 1166 EDA 2022 and 1167 EDA 2022"; "Commonwealth Court of PA Per Curiam Jane/John Does for the Jan. 10-23 Order at cases 1192 CD 2022, 1193 CD 2022, 1194 CD 2022"; "PA Supreme Court Per Curiam Jane/John Does for the June 26-23 Order at Case 12 EM 2023"; "PA Supreme Court Per Curiam Jane/John Does for the Aug 11-23 Order at Case 43 EM 2023"; Judge Megan Sullivan; Judge Mary Jane Bowes; Judge Daniel D. McCaffery; Judge Alice Beck Dubow; Judge Mary P. Murray; Judge Daniel

Bradley's interest in the Seffert Street Properties is not entirely clear. The properties were owned by Patricia Simon, who died in August of 2022. (Compl., ECF No. 2 at 19.) Bradley alleges that prior to Simon's death, she and Simon entered into a "Joint Venture Agreement," the contents of which are not disclosed. (*Id.* at 19.) Based on this Joint Venture Agreement, Bradley claims that she is "the reputed owner" of the Seffert Street Properties and that she was and continues to be an "indispensable party" to any litigation related to the Properties. (*Id.*) She alleges that she is the "administrator" of the "Simon Estate" and "shares no authority over the property with others." (*Id.*) The Seffert Street Properties are allegedly assessed at $1,233,700 and contain a number of "implied private easements" or rights-of-way to the main road. (*Id.* at 18, 20-21.) Without the easements, the Properties are allegedly "landlocked" as they abut Fairmount Park. (*Id.* at 19-27.) Bradley alleges that, at some undisclosed time, the City of Philadelphia landlocked the Seffert Street Parcels by permitting acres of land to be added to Fairmount Park, which, in turn, "extinguish[ed]" the implied easements. (*Id.* at 27.) Bradley alleges that by extinguishing the easements, which in turn landlocked the Seffert Street Properties and rendered them unmarketable, the City of Philadelphia committed a "defacto taking" of the Seffert Street Properties. (*Id.* at 28, 37, 49.) Bradley further alleges that the City of Philadelphia "overtaxed" the Seffert Street Properties

---

Anders; Judge Joshua Roberts; "Jane/John Does – involved in suppressing records from trial court record 1192 CD 2022"; "Jane and John Does State Court employees involved in suppressing records from trial court records 393 EDA 2022, 2100 EDA 2022, and 583 EDA 2023"; "Jane and John Does -- Setup Private Criminal Complaint as a Miscellaneous Docket Instead of a Private Criminal Complaint at case CP -51-MD-003368-Oct 20-2021"; Joseph Selletyn; the Commonwealth of Pennsylvania; Judge Pratter; "Jane or John Doe – Federal employee – created the Feb 1, 2024 Memorandum and Order"; "Jane or John Doe Federal employee – entered the February 1, 2024 Memorandum and Order"; Judge Tamika Montgomery-Reeves; Judge Sánchez; the United States of America; the Government of the United States of America; and Judge Arianna Freeman.

and, in May of 2023, filed a petition to have them sold in a sheriff sale. (*Id*. at 49, 227.) It is not clear from the Complaint whether the Seffert Street Properties have been sold pursuant to a sheriff sale and who currently owns the properties.

Bradley references numerous state court proceedings in connection with the Seffert Street Properties and her attempts to assert a financial interest in those properties. In particular, in October of 2021, Bradley filed a quiet title action that was later dismissed. (ECF No. 2-2 at 112.) She also filed "private criminal complaints" against various City of Philadelphia employees and judges in relation to their handling of the quiet title action. (ECF No. 2-1 at 32-33, 59-60, 117-18, 147-157.) At least one of her private criminal complaints was ultimately dismissed for lack of standing.[4] (ECF No. 2-1 at 112-18.) Bradley filed appeals regarding the quiet title action and the private criminal complaint matters. (ECF No. 2-1 at 196-98; ECF No. 2-2 at 78-80, 112-116.) Bradley also references a "fraudulent police report" created by the Philadelphia Police Department's 9th District in February of 2025. (ECF No. 2-1 at 147-57.)

---

[4] Publicly available on the United Judicial System of Pennsylvania website is the Pennsylvania Superior Court's November 21, 2023 Memorandum affirming the denial of Bradley's petition to refer private criminal complaint to a special investigations panel or, in the alternative, ask for intervention by the Attorney General. *See In re: Other, Appeal of: Aisha Bradley*, Case No. 583 EDA 2023 (Sup. Ct. Pa. Nov. 21, 2023), available at www.pacourts.us/assets/opinions/Superior/out/J-S37038-23m%20-%20105746203246905291.pdf?cb=1 (last accessed Jan. 8, 2025).

In its November 21 Memorandum, the court explained that the case "originated when Bradley filed a private criminal complaint concerning real property owned by Patricia Simon, a 70-year-old friend," and that Bradley alleged she "had been appointed as Ms. Simon's agent pursuant to a power of attorney (POA)." *Id*. After the District Attorney refused to prosecute Bradley's private criminal complaint, Bradley appealed the disapproval to the Philadelphia Municipal Court and then later to the trial court. *Id*. At the trial court, Bradley was asked to produce the POA that authorized her to proceed on behalf of Ms. Simon. *Id*. When Bradley "produced a 10-page document which lacked an original signature and was otherwise defective," the trial court dismissed her appeal for lack of standing. *Id*. Bradley thereafter filed numerous appeals and applications and incessantly contacted judges and court staff, which ultimately resulted in an injunction preventing Bradley from filing "further frivolous filings." *Id*.

Bradley alleges that she had attempted to report fraud and public corruption involving City of Philadelphia employees; however, the Police Department failed to include in the police report Bradley's allegations of fraud and collusion and instead coded the report as a "minor disturbance." (*Id.*)  In this Complaint, Bradley asserts claims against many of the state, federal, and city employees involved in these lawsuits, complaints, and appeals.  She asserts an assortment of claims, such as for fraud; conspiracy; theft; violations of her Fifth and Fourteenth constitutional rights; "racism" and "classism"; violations of Pennsylvania statutes addressing property ownership; violations of the Pennsylvania Constitution; violations of state and federal rules of procedure; violations of 42 §§ 1982, 1983, 1985, 1986, 1987, and 1988; "job loss"; and Civil RICO.  For relief, she requests money damages, that the matter be "forwarded over to the FBI for a criminal investigation," that the state civil tax matters and subsequent appeals of those matters be "removed" from the state courts to the federal courts, and that the "fraudulent police report" be "corrected." (*See, e.g.*, ECF No. 2 at 106-111.)

## II.     STANDARD OF REVIEW

The Court grants Bradley leave to proceed *in forma pauperis* because it appears that she cannot afford to pay the filing fee.  When allowing a plaintiff to proceed *in forma pauperis*, the Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires dismissal if the Complaint fails to state a claim.  The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible

claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Id.* An unrepresented litigant also "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id*. This includes compliance with Federal Rule of Civil Procedure 8, which requires that the pleading contain a "short and plain statement showing that the pleader is entitled to relief," accompanied by a statement of the court's jurisdiction and a demand for the relief sought. Fed. R. Civ. P. 8(a). Each averment must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Together, Rules 8(a) and 8(d)(1), should be construed to "underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996) (citation omitted). In meeting Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019) (citation omitted). "Naturally, a pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* (quoting *Schaedler v. Reading Eagle Publication, Inc.*, 370 F.2d 795, 799 (3d Cir. 1967)) (additional citation omitted). The important consideration for the Court is whether "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94 (citations omitted).

### III. DISCUSSION

#### A. Rule 8

Bradley's Complaint does not comply with Rule 8(d)(1)'s "simple, concise, and direct" requirement or Rule 8(a)'s "short and plain statement" requirement. While *pro se* pleadings are generally afforded leniency and liberal construction, there are limits to a Court's flexibility. District Courts are permitted discretion to dismiss "excessively prolix and overlong complaint[s]," *see Garrett*, 938 F.3d at 93, particularly because they place an 'unjustified burden on the court and the party who must respond to" them, *see Kamdem-Ouaffo v. Huczko*, 810 F. App'x 82, 84 (3d Cir. 2020) (*per curiam*). Bradley's Complaint is 1726 pages long and contains 5371 single-spaced, separately numbered paragraphs and a separate 23-page table of contents. The thousands of exhibits she files with her Complaint—too voluminous to include on the docket—are listed on a separate 105-page document. (ECF No. 2-10.) Although Bradley's attempts to assert a financial interest in the Seffert Street Properties appear to be the focus of her Complaint, she asserts approximately 1270 claims against 49 state, federal, and city Defendants.

Bradley's Complaint is so excessively voluminous in violation of Rule 8(d)(1) that it cannot possibly proceed in its current form. *See In re Westinghouse*, 90 F.3d at 703 (affirming dismissal of portion of complaint that was 240 pages and over 600 paragraphs long); *Huczko*, 810 F. App'x at 83-84 (affirming dismissal of second amended complaint under Rule 8 where it "spanned over 800 numbered paragraphs," contained "an inauspicious seven-page table of contents," and continued to suffer from redundancy and other deficiencies); *Ouaziz*, 2023 WL 7001846, at *3 (affirming dismissal of complaint that was 108 pages and 620 separately-numbered paragraphs that were "unnecessarily complicated and verbose" because it violated Rule 8(d)(1) in that it "fail[ed] to provide a clear narrative of either the factual or legal basis for

Plaintiff's claims"), *cert. denied sub nom. Ouaziz v. City of Jersey City, New Jersey*, 144 S. Ct. 1462, 218 L. Ed. 2d 692 (2024); *Karupaiyan v. Naganda*, No. 22-2066, 2022 WL 4965379, at *2 (3d Cir. Oct. 4, 2022) (*per curiam*) (affirming dismissal of second amended complaint that consisted of 361 pages and 1458 separately-numbered paragraphs); *Frazier v. Kuhn*, No. 21-16842, 2024 WL 6466863, at *1 (D.N.J. July 18, 2024) (denying proposed amended pleading that was 201 pages long and spanned 752 paragraphs as violative of Rule 8 and noting that permitting the pleading "would impose a significant burden upon the Court as well as Defendants"); *Brejcak v. Cnty. of Bucks*, No. 03-4688, 2004 WL 377675, at *3 (E.D. Pa. Jan. 28, 2004) ("While there is no precise algorithm that answers at what length a complaint becomes objectionable, it is reasonable to conclude that 216 separate paragraphs are excessive under notice pleading, which the Federal Rules require.").

Bradley's Complaint also violates Rule 8(a)'s plain statement requirement. The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). With respect to many of the Defendants named, Bradley simply copies and pastes large sections of her claims without articulating specific facts about how that Defendant is allegedly liable for each claim. As an example, Bradley asserts 23 separate federal and state law claims against City of Philadelphia employee Thomas Marro, including for fraud, conspiracy, and violations of her constitutional rights. However, for each of the 23 claims asserted against Marro, Bradley simply refers to earlier allegations that are not specific to Marro or recites legal standards without any reference to Marro. (*See* ECF No. 2 at 118-139.) And, despite asserting 23 claims against him, Bradley includes only one fact about Marro: that he sent her a January 3, 2019 email stating that "it may be imprecise to say that the City landlocked the

8

property."[5] (*Id*. at 118.)  In addition to this pervasive, non-specific redundancy, the Complaint also suffers from a writing style that is disjointed and difficult to understand.  Bradley often combines incomplete factual allegations, conclusory legal statements, and numerous references to exhibits or pleadings in single run-on sentences.[6]  This, together with the paucity of factual allegations tying each Defendant to the numerous claims asserted against each of them, renders the nature of Bradley's claims unclear and fails to give Defendants fair notice of the grounds upon which her claims rest.  *See Okogun v. Trs. of Princeton Univ.*, No. 23-2402, 2024 WL 1427585, at *2 (3d Cir. Apr. 3, 2024) (*per curiam*) (affirming dismissal of 160-page complaint that violated Rule 8 where the "'causes of action' either [did] not connect to any factual allegations or refer[ed] to dozens of pages of text that cover[ed] many related events").

---

[5] If Bradley's claims against Marro are based on this e-mail alone, all claims against him would likely be time-barred.  *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (explaining that the statute of limitations for § 1983 claims is governed by the personal injury tort law of the state where the cause of action arose and that Pennsylvania has a two-year statute of limitations for personal injury actions); 42 Pa. Const. Stat. § 5524(7) (noting a 2-year statute of limitations for damages claims based on "injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct . . . including deceit or fraud").

[6] Although the Court may consider exhibits attached to a complaint in conducting statutory screening, a plaintiff may not state a claim by relying solely on exhibits or by simply referencing them.  *See Berkery v. Credit Collection Servs.*, No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021) ("While a court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."); *Estate of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) ("[W]e cannot fault the District Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint.").  Rather, a plaintiff must articulate in narrative form the facts giving rise to the claims that she intends to pursue.  *See Prelle v. United States by Prelle*, No. 22-1453, 2022 WL 16958896, at *1 (3d Cir. Nov. 16, 2022) (*per curiam*) ("A complaint must contain sufficient clarity to avoid requiring a district court or opposing party to forever sift through its pages in search of the nature of the plaintiff's claim." (internal quotations and citations omitted)).

The Court will permit Bradley to file an amended complaint that complies with Rule 8. Given the length of Bradley's submission, it is not possible for the Court to address every claim or identify every defect. That being said, to guide Bradley as to any amended complaint she might file, the Court notes some of the overarching defects below. If Bradley files an amended complaint, she must include factual allegations supporting each claim against each Defendant and avoid merely rehashing legal standards, referring to exhibits, or copying irrelevant sections of her pleadings. Finally, if Bradley files an amended complaint, she may not rename Defendants or reassert claims that will be dismissed with prejudice, as set forth below.

### B.    Judicial Immunity

Bradley names fourteen federal and state judges as a Defendants in this case. "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Capogrosso v. The Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)); *see also Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Capogrosso*, 588 F.3d at 184 (citations omitted). Moreover, "[i]mmunity will not be forfeited because a judge has committed 'grave procedural errors,' or because a judge has conducted a proceeding in an 'informal and ex parte' manner, . . . [or] because the judge's action is 'unfair' or controversial." *Gallas*, 211 F.3d at 769 (citations omitted). A judge will be subject to liability only "when he has acted 'in the clear absence of all jurisdiction.'" *Id.* (quoting *Stump*, 435 U.S. at 356-57).

Bradley alleges no facts to support a plausible finding that any of the fourteen judges named acted in the absence of jurisdiction. She specifically alleges that Judge Patrick Dugan had *ex parte* communications with Assistant District Attorney James Dellafiora and listed her as a power of attorney instead of as an affiant on a private criminal matter, which ultimately impacted her standing and the ultimate dismissal of the matter. (ECF No. 2-1 at 195-198.) She alleges that Judge Michelle Hangley, Judge Joshua Roberts, and Judge Daniel Anders "fraudulently" denied motions and appeals "as if [she] were representing the estates," which led to the dismissal of Bradley's quiet title action. (ECF No. 2-2 at 112-117; ECF No. 2-6 at 53-58.) Judge Anders allegedly quashed a subpoena, provided a "false statement" about Bradley's ability to assert standing, "control[ed] the docket" in a state court matter before him, and entered an Order directing the Office of Judicial Records to not accept further filings from Bradley.[7] (ECF No. 2-6 at 54-58.) Judge Roberts also allegedly rejected Bradley's "amended answers" and "affidavit of defense." (*Id*. at 124.) Bradley further alleges that Judge Megan Sullivan, Judge Mary Jane Bowes, Judge Daniel McCaffery, Judge Alice Beck Dubrow, and Judge Mary P. Murray "set up for dismissal the appeal" of Bradley's private criminal complaint against City of Philadelphia employees and "suppressed court transcripts and audio recordings." (ECF No. 2-4 at 70, 109, 148; ECF No. 2-5 at 12, 51.) Bradley alleges that Judge Crystal Bryant-Powell considered *ex*

---

[7] The October 21, 2024 Order states that, "upon consideration of the repetitive, duplicative, and frivolous submission[s] of Aisha Bradley, it is hereby ORDERED that the Office of the Judicial Records Office is to accept no further filing by Aisha Bradley without prior approval of the Supervising Judge of the Civil Division." (ECF No. 2-6 at 58.) Bradley has also been subjected to pre-filing injunctions in this Court. *See, e.g.*, *City of Philadelphia v. Bradley*, Nos. 24-6156, at ECF No. 62; *City of Philadelphia v. Bradley*, Case No. 24-211, at ECF No. 11. Moreover, Brady's history of abusive filings in this Court has led to the revocation of her privilege to use the Court's Electronic Document Submission Tool ("EDS"). *See Bradley*, No. 24-6156, at ECF No. 6.

11

*parte* communications when denying her appeal and denied her requests for transcripts and audio recordings. (ECF No. 2-2 at 5-8.)

Bradley also names as Defendants the United States District Court and Third Circuit Court of Appeals judges who remanded her removed state court civil tax actions back to the Philadelphia Court of Common Pleas or affirmed the remand orders during subsequent appeals. In particular, Bradley alleges that Judge Pratter "ignored state court judicial misconduct and the deprivation of" her due process rights by remanding her cases. (ECF No. 2-8 at 32.) She alleges that Judge Sánchez "fraudulently remanded" her cases back to the Court of Common Pleas because he did not want to hold the state court judges accountable and because he "ignored the statutory directives associated with removal." (ECF No. 2-8 at 91-95.) She states that Judge Montgomery-Reeves "fraudulently denied" Bradley's appeal of her notice of removal. (*Id*. at 64.) She also states that Judge Freeman "ignored statutory directives" and made "false statements" in her March 7, 2025 Order affirming remand by stating that review was plenary and that a permissible theory of removal was not advanced. (ECF No. 2-9 at 1-7.)

None of the allegations Bradley asserts against the state and federal judges she names in her Complaint support a plausible inference that any judge acted completely outside their legal authority. All of Bradley's allegations relate to actions the judges took in their judicial capacity. Accepting the allegations in the Complaint as true, judicial immunity is not defeated simply because judges may have made or considered false statements or engaged in *ex parte* communications. *See Gallas*, 211 F.3d at 769; *Capogrosso*, 588 F.3d at 184; *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 660 (E.D. Pa. 2014) (finding judges were entitled to immunity because acts were taken in judicial capacity and plaintiff did not show an absence of jurisdiction, and immunity applied despite allegations of bad faith and conspiracy), *aff'd*, 572 F. App'x 68 (3d

Cir. 2014) (*per curiam*); *see also Lee v. Gallina Mecca*, No. 22-2871, 2023 WL 5814783, at *4 (3d Cir. Sept. 8, 2023) ("But even accepting Lee's allegations as true, judicial acts that appear to be unfair, malicious, or *ex parte* are not stripped of their judicial immunity."); *Gage v. Miller*, No. 13-698, 2014 WL 1789653, at *2 (D.N.J. May 6, 2014) (dismissing claims asserted against state court judge as barred by judicial immunity where claims were based solely on "actions taken in his judicial capacity, i.e., entering orders and rendering decisions relating to the ownership of the Property"). Accordingly, all the claims Bradley asserts against the fourteen state and federal judges named in the Complaint will be dismissed with prejudice as barred by judicial immunity.

### C. Quasi-Judicial Immunity

Bradley also names as Defendants various state and federal court employees who were tasked with docketing orders or otherwise implementing or enforcing court orders. Court and clerk's office employees enjoy absolute quasi-judicial immunity when performing duties required by statute or at the direction of judicial authority. *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969) ("In addition to the recognized immunity enjoyed by judicial and quasijudicial officers, including prothonotaries, there exists an equally well-grounded principle that any public official acting pursuant to court directive is also immune from suit."); *Dongon v. Banar*, 363 F. App'x 153, 156 (3d Cir. 2010) (*per curiam*) ("[A]ctions taken by those charged with the responsibility of carrying out a court's order would be barred by the doctrine of absolute quasi-judicial immunity.").

In the Complaint, Bradley alleges that Michael Ammann, a state court employee, transcribed proceedings in connection with a private criminal complaint and that statements were added and omitted from the transcripts. (ECF No. 2-2 at 49.) All claims against Ammann must

be dismissed, as a court reporter is entitled to quasi-judicial immunity. *See Cook v. Smith*, 812 F. Supp. 561, 563 (E.D. Pa. 1993) (concluding that absolute quasi-judicial immunity barred claim against court reporter for allegedly incorrectly transcribing criminal proceeding). Bradley also asserts claims against state court prothonotaries. For example, she alleges that Joseph Seletyn, Phoenicia Wallace, and Irene Bizzoso put "fraudulent government documents on the docket" in various state cases and appeals and failed to "process" certain appeals as "direct appeals," which apparently affected her rights. (ECF No. 2-2 at 78, 159; ECF No. 2-3 at 32.) Bradley fails to explain why or how these documents were allegedly fraudulent. Nor does she allege that any defendant disobeyed the directions of the judge presiding over the case. Based on Bradley's allegations, these Defendants are all entitled to absolute quasi-judicial immunity. *See Lockhart*, 411 F.2d at 460 (affirming judgment in favor of prothonotary based on immunity and stating that "no basis in law exists whereby civil liability can be imposed upon a public official acting pursuant to court order and direction").

In addition, Bradley names as defendants nine groups of unidentified court employees associated with her state and federal cases: (1) "Superior Court Per Curiam – Jane/John Does for the July 11, 2022, Order at cases 1166 EDA 2022 and 1167 EDA 2022 – State Employees"; (2) "Commonwealth Court of PA Per Curiam Jane/John Does for the Jan. 10-23, Order at cases 1192 CD 2022, 1193 CD 2022, 1194 CD 2022 – State Employees"; (3) "PA Supreme Court Per Curiam Jane/John Does for the June 26-23, Order at case 12 EM 2023 – State Employees"; (4) "PA Supreme Court Per Curiam Jan/John Does for the Aug. 11-23, Order at case 43 EM 2023 – State Employees"; (5) "Jane and John Does – State Court Employees – Involved with Suppressing Records from the Trial Court Record 1192 CD 2022"; (6) "Jane and John Doe – State Court Employees – Involved with Suppressing Records from Trial Court Records 393 EDA

14

2022, 2100 EDA 2022, and 583 ED 2023"; (7) "Jane and John Does – State Court Employees – Involved with Setting Up case CP-51-MD-0003368 – Oct-20-2021, as Miscellaneous Docket Instead of Private Criminal Complaint"; (8) "Jane or John Doe – Federal Employee that created the February 1, 2024 Memorandum and Order"; and (9) 'Jane or John Doe – Federal Employe that entered the February 1, 2024 Order."

Bradley alleges that the groups of unidentified state court Defendants did not allow her to appeal court orders, dismissed her petition to quiet title, "set up" her cases for dismissal, "suppressed records from the trial court record" of various appeal dockets, and designated her private criminal complaint as a miscellaneous docket, which affected her standing. (ECF No. 2-3 at 75, 107, 141; ECF No. 2-4 at 21; ECF No. 2-5 at 90, 124, 158.) She also alleges that the John or Jane Doe federal employee who allegedly "created" or "entered" the February 1, 2024 Memorandum Order in her removed civil tax matters "submitted fraudulent information" to Bradley. (ECF No. 2-8 at 58.) Each of these categories of Defendants consists of judges subject to absolute judicial immunity or court employees subject to absolute quasi-judicial immunity. Accordingly, these categories of named Defendants will also be dismissed with prejudice, as all claims asserted against them are barred. *Gallas*, 211 F.3d at 772 (holding that deputy court administrator was "absolutely immune for simply acting as an intermediary between [a party] and the judge"); *DeFerro v. Coco*, 719 F. Supp. 379, 381 (E.D. Pa. 1989) (holding that absolute immunity extends to court clerk because he was a "nonjudicial official whose activities are integrally related to the judicial process and involve the exercise of discretion comparable to that of a judge").

### D. Claims Asserted under Criminal Statutes and Claims Seeking Investigation or Prosecution

Bradley asserts claims under federal and state criminal statutes, such as under 18 U.S.C.

15

§ 241, 18 U.S.C. § 242, and 18 Pa. Cons. Stat. Ann. § 5101.  Sections 241 and 242 establish criminal liability for certain deprivations of civil rights and conspiracy to deprive civil rights.  They are federal criminal statutes that do not provide a legal basis for a civil cause of action.  *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone."); *Colon-Montanez v. Pennsylvania Healthcare Serv. Staffs*, 530 F. App'x 115, 118 (3d Cir. 2013) (*per curiam*) ("[T]hese criminal statutes [18 U.S.C. §§ 241 and 242] provide no private right of action for use by a litigant such as Colon–Montanez.").  Similarly, there is no private civil cause of action available under Pennsylvania's obstruction of justice statute, 18 Pa. Cons. Stat. Ann. § 5101.  *Brookins v. Bristol Twp. Police Dep't*, 642 F. App'x 80, 81-82 (3d Cir. 2016) (*per curiam*) ("Finally, the District Court correctly ruled that Brookins is not entitled to maintain a civil claim under 18 Pa. Cons. Stat. § 5101, Pennsylvania's criminal obstruction-of-justice statute."); *Youst v. Roth*, No. 23-0848, 2023 WL 3821813, at *4 n.5 (E.D. Pa. June 5, 2023) (holding that Pennsylvania's criminal statute § 5101 "fails to expressly provide for a private cause of action and there is no basis upon which to imply that one exists").  Because the only claims Bradley asserts against former City of Philadelphia Controller Rebecca Rhynhart and City of Philadelphia Inspector General Alexander DeSantis are claims under Pennsylvania's obstruction of justice statute, 18 Pa. Cons. Stat. Ann. § 5101, these Defendants will be dismissed from this case with prejudice.

Further, to the extent Bradley requests a criminal investigation against the Defendants, or seeks to bring claims based on any Defendant's refusal to investigate or prosecute the criminal charges she sought to pursue in connection with the Seffert Street Properties, there is no legal basis for any such claims.  *See Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) (explaining

that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (*per curiam*) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual." ); *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation." ).

### E. Claims against the United States and the United States Government

The Court understands Bradley to assert an assortment of claims against the United States and the United States Government based on Judge Sánchez and Judge Pratter remanding her state civil tax actions back to the Philadelphia Court of Common Pleas and based on Judge Montgomery-Reeves and Judge Freeman affirming the remand orders. (*See* ECF No. 2-8 at 122-175.) Even assuming the United States or its government could be liable for the actions of federal judges, the claims against these Defendants fail because suits against the United States are "barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (*per curiam*); see *also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Since Congress has not waived sovereign immunity for the asserted claims against the United States and the United States Government, Bradley's claims against these Defendants are barred by sovereign immunity.[8]

### F. Claims Asserted under the Pennsylvania Constitution

The Complaint also asserts claims against numerous Defendants under Articles I and V

---

[8] To the extent Bradley also brings claims against the United States based on the conduct of State or City employees, it unclear how the federal government would be responsible for conduct committed by other government actors.

of the Pennsylvania Constitution.  (*See, e.g.*, ECF No. 2-2 at 163-64 (asserting claims under Pa. Const. art. 1, § 10), 167-68 (Pa. Const. art. 1, § 1); ECF No. 2-3 at 7-9 (Pa. Const. Art. 5, § 9 and Art 1, § 11).)  However, there is no private right of action for damage claims asserted under the Pennsylvania Constitution.  *See Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011); *see also Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*) ("Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution.").  Accordingly, all claims Bradley asserts under the Pennsylvania Constitution must be dismissed with prejudice.

### G. Claims Asserted under State and Federal Procedural Rules

Bradley also asserts claims for violations of state and federal rules of civil and appellate procedure.  (*See, e.g.*, ECF No. 2-3 at 10 (asserting claim under Pa. R. App. P. 105(a)), 21-24 (asserting claim under Pa. R. App. P. 751, 905).)  These also include claims she asserts under Section 210 of the Pennsylvania Code, which contains the Pennsylvania Rules of Appellate Procedure, and Section 231 of the Pennsylvania Code, which contains the Pennsylvania Rules of Civil Procedure.  (*See, e.g.*, ECF No. 2-3 at 9 (asserting claim under 231 Pa. Code § 126), 11 (asserting claim under 210 Pa. Code § 63.3(c)).)  However, violations of state and federal rules of procedure do not create a basis for civil liability.  *See Shahin v. Darling*, 606 F. Supp. 2d 525, 539 (D. Del. 2009) (dismissing claims for violations of state procedural rules), *aff'd*, 350 F. App'x 605 (3d Cir. 2009); *Digene Corp. v. Ventana Med. Sys., Inc.*, 476 F. Supp. 2d 444, 452 (D. Del. 2007) ("Because the Federal Rules of Civil Procedure do not create a private cause of action, Digene's claim of civil conspiracy to evade discovery obligations necessarily fails."); *Carmax Auto Superstores, Inc. v. Sibley*, 194 F. Supp. 3d 392, 402-03 (D. Md. 2016) (dismissing

claim asserted under Fed. R. Civ. P. 5.2 because "the Rules Enabling Act, 28 U.S.C. § 2072(b), specifically states that the Federal Rules of Civil Procedure 'shall not abridge, enlarge or modify any substantive right'" and "courts have uniformly interpreted this language to mean that a failure to comply with the Federal Rules cannot create a private right of action"), *aff'd*, 730 F. App'x 174 (4th Cir. 2018).  Because there is no private right of action, any claims that Bradley asserts under the Federal Rules of Civil or Appellate Procedure, the Pennsylvania Rules of Civil or Appellate Procedure, or under Titles 210 or 231 of the Pennsylvania Code, will be dismissed with prejudice.

## IV.   CONCLUSION

The Court will grant Bradley's motion for leave to proceed *in forma pauperis* and dismiss the Complaint on statutory screening pursuant to 28 U.S.C. § 1915.  She will be permitted to file an amended complaint consistent with the guidance provided in this Memorandum.  Bradley's Motion for the appointment of counsel and her miscellaneous motions will be denied.[9]  An appropriate Order containing more information about amendment follows.

BY THE COURT:

HON. MIA R. PEREZ

---

[9] In determining whether to appoint *pro bono* counsel, the Court must first consider, as a threshold matter, whether the plaintiff's claim has "some merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993).  For the reasons explained, Bradley's Complaint fails to meet this threshold requirement.